JOURNAL ENTRY and OPINION
Defendant-appellant Brian Biddlecom appeals from his conviction after a bench trial on one count of burglary. Appellant contends the state presented insufficient evidence to sustain his conviction. After a thorough review of the record, this court disagrees; therefore, appellant's conviction is affirmed.
Appellant's conviction stems from an incident that occurred in the early morning hours of Tuesday, August 4, 1998. During that time, a bicycle belonging to thirteen-year-old Gregory Horvath was stolen. Appellant had possession of the bicycle at the time of his arrest at approximately 2:30 a.m.
Gregory, his parents and his fifteen-year-old brother Matthew resided at 27071 Newton Circle in the City of North Olmsted, Ohio. As its name implies, Newton Circle is a cul-de-sac
residential street. It is located north of Lorain Road and extends eastward from Dover Center Road, the only road from which vehicular traffic can enter.
The Horvaths' home was at the terminus of the street. It was a "split level"[1] with a two-car, attached garage. Thus, one method of access into the living area of the house was through a door located at the rear side of the garage. Steps guarded by a small railing led from the garage level down to a door, through which the family entered the lower level of the inside living area.
The Horvath property was surrounded by a three-foot-high wooden fence. The family's neighbors on one side also had constructed a fence around their property; however, the two fences were separated by a gap. Since an elementary school existed to the rear of both families' properties, children walking to the school occasionally used the area between the fences as a walkway. This use of the property was tolerated but not encouraged. Moreover, during the summer, it seldom occurred.
On August 3, 1998 Joan Horvath, Gregory's mother, drove the youngster to a store in order to purchase a video game. Upon their return to their home at approximately 6:00 p.m., both noticed Gregory's bicycle standing next to the railing at the rear of the garage. Shortly thereafter, Gary Horvath, Gregory's father, arrived home from work. Mr. Horvath did not close the garage door since his sons often were outdoors "playing basketball."
At approximately 9:00 p.m., the elder Horvaths went for a walk with their dog. Neither Mr. nor Mrs. Horvath specifically remembered closing the garage door when they returned.
Matthew remained in the living room watching television after the rest of his family retired to their rooms to sleep. When "Jay Leno was over" at approximately 1:00 a.m., Matthew "took a shower," then "went out to get an ice cream from the refrigerator in the garage." Matthew noticed "the garage door [was] open, so [he] closed it."
Shortly before 2:30 a.m. on August 4, 1998, Westlake Police Officers John Jereb and Steve Paulick, who were driving separate patrol vehicles, had finished "a call" in the area of Dover Center Road and Westown Boulevard when they were "approached by a [female] motorist." What they learned from the woman caused them to follow her vehicle to the Westown Apartments.
Upon their arrival at the parking lot of the building, the woman parked her vehicle, exited it and "ran back" to Paulick. She pointed to a "blue Mountain bike, Pacific, laying in the grass" in front of her vehicle.
Jereb at that moment "saw a shadowy figure jump through the bushes southbound." Jereb heard Paulick using his radio to report "a theft of a bicycle in progress"; therefore, he immediately pursued the figure. Jereb was able to apprehend the suspect, later identified as appellant, shortly thereafter. Jereb placed appellant under arrest. After he had been informed of his constitutional rights, appellant "made an unsolicited comment. He was out jogging with a friend." Although appellant identified himself, he refused to identify the "friend."
However, as Jereb and Paulick placed appellant into the vehicle of Officer Patricia Weisbarth for transportation to the police station, appellant volunteered he had been "with Tony Cavaluchi." Cavaluchi, appellant's friend, arrived via motorcycle at the apartment complex shortly thereafter. Cavaluchi's attempt to discover from appellant the reason for appellant's arrest was unsuccessful; therefore, he followed Weisbarth to the Westlake Police Station.
The bicycle lying on the grass near the apartment building also was transferred to the police station. Since a report of a stolen bicycle had arrived earlier from the North Olmsted police, the Westlake police officers began the process of determining the bicycle's ownership.
During the booking process of appellant, the Westlake officers took photographs. Appellant wore, inter alia, a sweatshirt and shorts, and what "appeared to be a grease mark from like a bicycle chain" was present on the skin of his right calf. None of the officers involved in appellant's arrest and processing noticed any indication that appellant was inebriated.
Initially, appellant denied any knowledge concerning the bicycle. Cavaluchi, who arrived at the police station with the intention of driving appellant home, stated he did not know whether appellant had taken the bicycle.
At approximately 5:00 a.m., the Westlake police officers discovered the bicycle they had confiscated was not the bicycle that had been reported missing the previous day. Therefore, they released appellant from custody pending further investigation.
At approximately 9:00 a.m., after her husband had left for work, Mrs. Horvath received a telephone call from Tony Cavaluchi. Cavaluchi told Mrs. Horvath he "was somebody's father and [his] boy had gotten into trouble. He had gotten drunk at a bar and borrowed the bicycle that they had." Cavaluchi further told her, "[W]e would come back over and make amends with [you] later." Appellant and Cavaluchi had obtained the Horvaths' telephone number by referencing their address in the "Blue Line" telephone directory.
Prompted by the telephone conversation, Mrs. Horvath discovered Gregory's bicycle was missing from the garage. She telephoned her husband. Both of them contacted the North Olmsted police and reported it was stolen.
At approximately 9:00 a.m., Cavaluchi drove appellant to a discount department store, where appellant purchased a new bicycle. Then Cavaluchi drove appellant to the Horvath residence. The two men went to the door, rang the doorbell and, when Mrs. Horvath opened the door, attempted to explain their presence. Mrs. Horvath telephoned the North Olmsted police while appellant and Cavaluchi stood at her front door.
Officer David Woehrman, who earlier had taken the stolen bicycle report from the Horvaths, returned to their home in response to Mrs. Horvath's call. Woehrman observed appellant and Cavaluchi at the front door of the residence in "possession [of] a bike." Appellant stated to Woehrman that "his friend, Rich, was out drinking last night, that he was cutting through back yards and he saw [Gregory's] bike in the garage and took it home with him."
Appellant willingly acquiesced to Woehrman's request to accompany him to the North Olmsted Police Station. Cavaluchi drove and accompanied appellant inside.
Woehrman conducted some investigation, then spoke to appellant. Appellant agreed to give an oral statement. He told Woehrman and Detective James Yost that he had gone to Cavaluchi's apartment building and had met "his friend, Rich," there; Rich "was drunk." Appellant indicated "Rich" had taken the Horvaths' bicycle. Appellant further stated that he "was around the bike at the time the police showed up" and "ran because he was afraid."
In response to Yost's inquiries as to his role in the matter, Cavaluchi volunteered to give a written statement. In pertinent part, Cavaluchi informed the police appellant had purchased the new bicycle and he and appellant had attempted to present it to the Horvaths.
When Yost discovered appellant had purchased the new bicycle, he confronted appellant with that information. Appellant denied he had done so; furthermore, appellant now claimed the previous evening he had been at a North Olmsted drinking establishment called "Slam Jams" and then had decided to go "jogging" in the early morning hours.
Cavaluchi subsequently gave Yost a second written statement. Soon thereafter, appellant was placed under arrest.
On October 7, 1998 the Cuyahoga County Grand Jury indicted appellant on one count of burglary, R.C. 2911.12(A)(3). Appellant entered a plea of not guilty to the charge and retained counsel to represent him. On January 26, 1999 appellant executed a written waiver of his right to a jury trial; appellant's case thus proceeded to a bench trial.
The state presented the testimony of the Horvaths, Police Officers Jereb, Paulick, Weisbarth and Woehrman, Detective Yost, and Westlake Police Officer Jeffrey Hernandez, who had performed the booking procedure of appellant in the early morning hours of August 4, 1998. The state also introduced into evidence several photographs and copies of maps of the area in which the described incidents occurred.
Following the trial court's denial of his motion for acquittal, appellant presented the testimony of his girlfriend, Lori Mccarthy and the testimony of Tony Cavaluchi. Appellant also testified in his own behalf.
McCarthy testified she had been with appellant at "Slam Jam's" during the evening of August 3, 1998, that appellant had several alcoholic beverages, and that she left him there as she went home in a taxicab. Appellant testified he was inebriated in the early morning hours of August 4, 1998 so he decided to walk home. Appellant further stated for the first time that he found the bicycle outside on the Horvaths' lawn.
At the conclusion of the testimony and following the oral arguments of counsel, the trial court found appellant guilty of the charge. The trial court ordered a presentence investigation and report, then sentenced appellant to a term of incarceration of one year.[2]
Appellant has timely appealed from his conviction. He presents two interrelated assignments of error for review as follows:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN FAILING TO GRANT HIS MOTION FOR ACQUITTAL PURSUANT TO OHIO RULE OF CRIMINAL PROCEDURE 29(A) WHERE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR THE OFFENSE OF BURGLARY.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FINDING DEFENDANT-APPELLANT GUILTY OF THE OFFENSE OF BURGLARY WHERE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN ANY SUCH CONVICTION.
Appellant argues the trial court erred when it denied his motions for acquittal contending the state presented insufficient evidence to establish at least one essential element of the crime of burglary. This court disagrees.
A motion for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman
(1978), 55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v.Martin (1983), 20 Ohio App.3d 172.
R.C. 2911.12(A) states in pertinent part:
§ 2911.12 Burglary.
 (A) No person, by force, stealth, or deception, shall do any of the following:
* * *
 (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.
Although appellant admits he committed a theft when he took Gregory Horvath's bicycle, he first asserts the state failed to prove that he committed "trespass" by entering into the Horvath garage to commit a crime.
Viewing the evidence presented most favorably to the prosecution, however, the element of trespass clearly was established. Both Gregory and his mother testified the bicycle stood next to the railing at the rear of the garage at the time they arrived home from the store at 6:00 p.m. No one in the family moved it thereafter. Although both of the adult Horvaths assumed they closed the garage door that evening after walking the dog, Matthew observed it was open at approximately 1:30 a.m. Appellant admitted coming onto the Horvath property without permission. Moreover, appellant had the bicycle in his possession when the Westlake police encountered him at 2:30 a.m. Furthermore, appellant later admitted he took the bicycle without permission. Appellant could have done so only if he entered the Horvaths' garage to gain possession of it before the time Matthew closed the door.[3]
Appellant next asserts the state failed to prove he utilized "stealth or deception" to commit the crime. This argument also is rejected.
For purposes of R.C. 2911.12(A), "stealth" has been defined as any secret, sly or clandestine act to avoid discovery and to either gain entrance into or remain within the occupied structure of another without permission. State v. Lane (1976), 50 Ohio App.2d 41
at 47; State v. Griffin (May 26, 1999), Summit App. No. 19278, unreported.
In this case, although the garage door was open, appellant entered it under cover of darkness. This court previously has found such circumstances to be sufficient evidence to establish the element of stealth. State v. Cayson (May 26, 1998), Cuyahoga App. No. 72712, unreported at 6, footnote 2; State v. Cayson
(Nov. 25, 1998), Cuyahoga App. No. 72712, unreported; see, also,State v. Bruce (Sept. 25, 1997), Cuyahoga App. No. 70982, unreported.
Appellant relies on several decisions from other appellate districts to support his argument that the element of "force, stealth or deception" remains unproven when a defendant merely enters the open door of a structure. Nevertheless, the cases upon which appellant relies are distinguishable on their facts since the crimes for which each defendant was convicted occurred in the daylight hours and each defendant made no effort to avoid observation either when entering or when leaving the premises. See, e.g., State v. Pullen (June 25, 1992), Greene App. No. 91-CA-33, unreported; State v. Gregg (Oct. 26, 1992), Champaign App. No. 91-CA-15, unreported; State v. Brooks (Apr. 10, 1998), Greene App. No. 97-CA-9, unreported.
Additionally, this court does not find the foregoing cases persuasive authority because it disagrees with the analyses set forth by the appellate courts in each. A defendant's demeanor and actions in appearing to have the permission of the owner to enter a premises would qualify as deceptive conduct.
This court is supported in its view by the Ohio Supreme Court's decision in State v. Fontes (2000), 87 Ohio St.3d 527, in which the defendant entered the victim's apartment "uninvited" through an "unlocked" door; the sufficiency of the evidence to prove the element of "stealth, force or deception" of the offense of aggravated burglary was neither challenged nor commented upon by the supreme court.
In this case, appellant avoided observation by entering the garage at night while most of the Horvath family was sleeping. Furthermore, appellant entered and appropriated Gregory's bicycle so soundlessly that neither Matthew nor the family dog was alerted to appellant's presence. State v. Bell (Jan. 31, 1994), Butler App. No. CA93-07-143, unreported.
Thus, the state presented sufficient evidence to establish all the elements of the crime of burglary. The trial court, therefore, did not err in denying appellant's motions for acquittal of the charge.
Appellant's assignments of error are overruled.
Appellant's conviction and sentence are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY. P.J., and ANNE L. KILBANE, J. CONCUR.
 _________________________ JUDGE KENNETH A. ROCCO
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] This court has granted appellant's motion for suspension of his sentence pending the outcome of this appeal.
[3] Appellant's testimony that he took the bicycle from the Horvaths' lawn was a matter of credibility for the finder of fact to determine; thus, it relates to the weight of the evidence rather than its sufficiency. State v. Thompkins (1977), 78 Ohio St.3d 380.